**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JONATHAN CASTELLANO CANAR : <br> 452 Newton Place NW, Apt 1A : <br> Washington, D.C. 20010 : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> FINANCIAL MANAGEMENT SOLUTIONS, LLC : <br> d/b/a FMS FINANCIAL SOLUTIONS : <br> : <br> Serve: The Corporation Trust, Incorporated : <br> 2405 York Road, Suite 201 : <br> Lutherville Timonium, MD 21093 : <br> : <br> Defendant. : <br> _____ : | Civil Action No. 1:24-cv-1202 |

**COMPLAINT**

Plaintiff Jonathan Castellano Canar, by Counsel, brings the following Complaint against Defendant FMS Financial Solutions. In support of his Complaint, Mr. Castellano Canar alleges as follows:

**INTRODUCTION**

1. Mr. Castellano Canar is the victim of identity theft, which "has emerged" as "one of the fastest growing white-collar crimes in the United States." *Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 505, 2007 WL 4535267 (4th Cir. 2007). Surveys have shown that "between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone." *Id.*

1

2. The FCRA "provides the primary recourse for victims of identity theft." Christopher P. Couch, *Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft*, 53 Ala. L. Rev. 583, 587 (2002).

3. The FCRA's requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681.

4. The FCRA also contains requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of the information reported in their credit reports. *Id.* Thus, the FCRA holds the credit reporting agencies and furnishers responsible for taking reasonable steps to correct a consumer's credit report once she brought the theft to the agency's attention. *See Sloane*, 510 F.3d at 506–07 ("Of course, Equifax bore no responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct Suzanne's credit report once she brought the theft to the company's attention; this Equifax utterly failed to do.").

5. Because of identity theft, Mr. Castellano Canar's Experian credit report included two FMS accounts that did not belong to him. After Mr. Castellano Canar disputed the inaccurate information with Experian, it forwarded the dispute to FMS for investigation.

6. FMS failed to conduct a reasonable investigation and delete the inaccurate information from Mr. Castellano Canar's credit reports.

7. Accordingly, Mr. Castellano Canar also alleges claims against FMS for violating the FCRA, § 1681s-2(b)(1), by failing to properly investigate and respond to his disputes.

**JURISDICTION**

8. The Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in this judicial district.

## PARTIES

10. Plaintiff is a natural person residing in this District and Division and a consumer as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

11. FMS is a Maryland corporation. It is a "furnisher" as governed by the FCRA.

## FACTS

12. In June 2022, Mr. Castellano Canar applied for a mortgage and learned that there were two FMS collection accounts reporting on his Experian credit reports. These collection accounts stated that they resulted from a defaulted debt with "8600 Luxury Apartments."

13. Neither of these accounts belonged to Mr. Castellano Canar. In fact, since moving to the United States in 2018, Mr. Castellano Canar lived with his mother and had never signed a lease to rent an apartment.

14. After doing some research, Mr. Castellano Canar learned that these accounts were opened in August 2020—when he was a minor and could not have legally signed a lease.

15. And Mr. Castellano Canar also learned that these accounts were for the same $8,500 debt, but for some reason was reporting as two separate accounts on his report.

16. And in fact, after suing Mr. Castellano Canar for the account, the landlord ultimately agreed that he had never signed the lease and was not financially responsible for the accounts.

17. Because of this inaccurate credit reporting, Mr. Castellano Canar could not qualify for a mortgage loan.

18. Mr. Castellano Canar disputed this inaccurate information with Experian in July 2022, August 2022, September 2022, October 2022, and November 2022, because he was desperate to improve his credit reporting to take advantage of the historically low mortgage interest rates.

19. With each of these disputes, Mr. Castellano Canar explained that he did not open these accounts, which appeared to be duplicate accounts. He explained that he believed that he was the victim of identity theft and that he had filed a police report in Montgomery County, Maryland and filed an Identity Theft Report with the FTC. He also explained that the debt arose from a lease that was signed when he was a minor, and that he had never lived at the apartment that resulted in the collection account.

20. Mr. Castellano Canar also provided Experian with a copy of his FTC Identity Theft Affidavit several times.

21. Upon information and belief, each time that Mr. Castellano Canar disputed the inaccurate FMS accounts with Experian, Experian forwarded notification of his dispute to FMS.

22. In response to this notification, FMS failed to conduct an adequate investigation into Mr. Castellano Canar's dispute. Instead, it performed a cursory review of Mr. Castellano Canar's information to confirm that it matched the information already in its system and verified its prior reporting, without investigating the substance of Mr. Castellano Canar's dispute. For example, upon information and belief, FMS took no steps to verify whether Mr. Castellano Canar was in fact the victim of identity theft.

23. Once FMS verified its reporting, Experian accepted the outcome of FMS's investigation without conducting any other investigation or review of Mr. Castellano Canar's dispute. If Experian had conducted any meaningful investigation, it would have seen that the

collection accounts arose from a debt that was opened when Mr. Castellano Canar was a minor—a hallmark of identity theft.

24. Despite Mr. Castellano Canar's five disputes, FMS refused to remove the inaccurate information from his file, and it was still reporting when Mr. Castellano Canar applied for a mortgage in late 2022.

25. This continued inaccurate reporting caused Mr. Castellano Canar's mortgage application to be denied.

26. Mr. Castellano Canar has suffered significant actual damages because of FMS's inaccurate reporting and failure to conduct adequate investigations into his disputes.

27. For example, Mr. Castellano Canar has suffered two mortgage denials, a significantly reduced credit score, reputational damage, and significant emotional distress.

28. FMS's processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA. In fact, FMS acted in accordance with its intended procedures. In addition, FMS prioritizes processing disputes quickly over making sure that the disputes are investigated thoroughly and accurately.

29. In addition, the willfulness of FMS's FCRA violations can be established by, for example:

   a. Congress enacted the FCRA in 1970, and FMS has had over 50 years to become compliant;

   b. FMS is a corporation with access to legal advice through its own general counsel and outside litigation counsel. Yet, there is not contemporaneous evidence that FMS determined that its conduct was lawful;

c. FMS knew, or had reason to know, that its conduct was inconsistent with the FCRA's plain language, regulatory guidance, and the relevant case law;

d. FMS voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

e. FMS's FCRA violations were repeated and systematic;

f. FMS had substantial documentation available to it that apprised it of its duties under the FCRA but still chose not to comply with the statute; and

g. FMS had notice of its defective dispute processing procedures through internal audits and litigation but chose not to meaningfully change its policies and procedures to comply with the FCRA.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)
## (FMS)

30. Mr. Castellano Canar incorporates the preceding allegations.

31. FMS violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to properly investigate Plaintiff's disputes.

32. When Plaintiff disputed the accounts with Experian, FMS used a dispute system named "e-Oscar," which is an automated system that the consumer-reporting agencies have developed to quickly transmit disputes to furnishers.

33. E-Oscar's dispute processing is systemic and uniform: when the credit reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

34. Upon information and belief, the ACDV form is the way FMS has elected to receive consumer disputes under 15 U.S.C. § 1681i(a).

35. Upon information and belief, Experian forwarded Mr. Castellano Canar's disputes to FMS by an ACDV.

36. FMS understood the nature of Plaintiff's disputes when it received the ACDV form from Experian.

37. Upon information and belief, when FMS received Mr. Castellano Canar's disputes, it followed a standard and systemically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the credit reporting agency.

38. Upon information and belief, when PennyMac receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether there is information already in its computer system that would demonstrate the disputed information is misleading or inaccurate.

39. Because of FMS's 15 U.S.C. § 1681s-2(b)(1)(A) violations, Mr. Castellano Canar suffered actual damages, including credit denials, a reduced credit score, reputational damage, embarrassment, humiliation, and other emotional distress.

40. FMS's conduct was willful, rendering it liable to Mr. Castellano Canar for punitive damages under 15 U.S.C. § 1681n. In the alternative, FMS was negligent, entitling Mr. Castellano Canar to recover under 15 U.S.C. §1681o.

41. Mr. Castellano Canar is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from FMS under 15 U.S.C. §§ 1681n and 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
## (FMS)

42. Mr. Castellano Canar incorporates the preceding allegations.

43. On one or more occasions within the past two years, FMS violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer-reporting agencies.

44. As Mr. Castellano Canar detailed in the previous Count, FMS has elected to use the e-Oscar system to receive FCRA disputes from the consumer-reporting agencies.

45. When it received the ACDV forms from the credit-reporting agencies, FMS did not review any of the information that Mr. Castellano Canar included in his dispute, which demonstrated that FMS's reporting of the account was inaccurate.

46. If FMS had reviewed this information, it would have known that its previous reporting was incorrect and needed to be updated.

47. FMS also ignored the other information that the consumer-reporting agencies provided on Mr. Castellano Canar's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

48. FMS knew the meaning of the dispute codes used by the consumer-reporting agencies in e-Oscar.

49. FMS does not contend that the ACDV system is an inadequate means to receive FCRA disputes from the consumer-reporting agencies.

50. FMS understood Mr. Castellano Canar's disputes and that he was disputing ownership of the FMS accounts.

51. Despite this, FMS did not update its incorrect reporting regarding the accounts and continued to inaccurately attribute them to Mr. Castellano Canar.

52. Because of FMS's 15 U.S.C. § 1681s-2(b)(1)(B) violations, Mr. Castellano Canar suffered actual damages, including credit denials, a decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

53. FMS's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for damages under 15 U.S.C. § 1681n.

54. In the alternative, FMS was negligent, entitling Mr. Castellano Canar to recover damages under 15 U.S.C. § 1681o.

WHEREFORE, Mr. Castellano Canar demands judgment for actual, statutory, and punitive damages against Defendant as pled above; his attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**JONATHAN CASTELLANO CANAR**

By: */s/ Kristi C. Kelly*
Kristi C. Kelly, DC No. 974872
Casey S. Nash, DC No. 1028868
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Phone: 703-424-7572
Fax: 703-591-0167
Email: kkelly@kellyguzzo.com
Email: casey@kellyguzzo.com
*Counsel for Plaintiff*